HORTON & CORNWELL v. GARCÍA ET AL.

APPEAL from the District Court of Mayagüez.

No. 203.—Decided March 4, 1908.

APPEAL—CONTRADICTORY EVIDENCE—FINDINGS OF INFERIOR COURT UPON THE EVIDENCE.—In cases of conflicting or contradictory testimony of witnesses the conclusions reached by the inferior court in its findings upon the evidence must be accepted by the appellate court unless manifest error has been committed.

The facts are stated in the opinion.
*Mr. Felin* for appellants.
*Mr. Mestre* for respondents.

MR. JUSTICE HERNÁNDEZ delivered the opinion of the court.
This is an action brought in the District Court of Mayagüez on December 19, 1906, by the law firm of Horton & Cornwell against the above-mentioned defendants, for the recovery of $850 representing fees for professional services rendered said defendants.

The plaintiffs alleged in their complaint that in the month of November, 1905, they entered into a contract with the defendants, represented by their tutoress, Clotilde Delgado, agreeing to render their professional services in the prosecution of an action in equity in the District Court of the United States for Porto Rico, against Antonia Cabassa, the widow of Diego García Saint Laurent, for an accounting and the partition of property the value of which exceeded $35,000, and in compliance with said contract, the plaintiff firm prepared and made the necessary complaint, advised the defendants, incurred expenses and represented them in an attempted settlement of the proceedings proposed to the defendants in this action, by the defendants in the District Court of the United States for Porto Rico, which settlement the defendants refused to accept, and subsequently refused to prosecute the proceedings and to remunerate them for the services rendered, a reasonable fee for which is $850.

Clotilde Delgado, in answering the complaint, denied that she had entered into any contract with the plaintiffs for the prosecution of an action in the District Court of the United States for Porto Rico, and that they had rendered their professional services in such connection. What had occurred was that the plaintiffs, having made use of Eduardo Koppisch to see if he could get her to place them in charge of her affairs, they had secured possession of certain documents which were in the hands of Fernando Vázquez and endeavored to bring about a compromise which the defendants rejected and they had also refused to prosecute or institute any action and be represented by the plaintiffs, who did not render any professional services to the defendants.

As new matter constituting a defense and exception, the defendants alleged that on the hypothesis that there were any truth as to the contract entered into between Clotilde Delgado and the plaintiffs, such contract would have been invalid owing to the lack of proper judicial authority to enter into it, and because the object of such contract would have been an

impossible thing or service, such as the proceedings in the
Federal Court for the District of Porto Rico, inasmuch as
the tutoress lacked the power to institute such proceedings
without the proper judicial authority, and the defendants in
such proceedings were beyond the jurisdiction of said court.

The trial having been held on April 18, 1907, the Maya-
güez court rendered judgment on the 22d of the same month,
entered the same date, which held that the law and the facts
were against the plaintiffs, and, consequently, that the latter
were not entitled to recover from the defendants, who were
relieved of any liability with respect to the complaint, with
the costs against the plaintiffs.

On the 27th of said month of April, the plaintiff notified
the secretary of the court as also the adverse party of his
intention to move for a new trial, on the ground that the judg-
ment was not supported by the evidence and that it was con-
trary to the law, stating further that the petition or motion
for a new trial would be based on a statement of facts, which
statement was prepared and approved by the judge on the
following 28th of May.

The motion for a new trial was filed in court and was over-
ruled by order of September 14 of said year.

On the 21st of said month of September, the plaintiff ap-
pealed from the judgment rendered and from the order deny-
ing a new trial, which appeal is now awaiting the decision of
this Supreme Court.

The appellant bases the appeal on the ground that the evi-
dence introduced at the trial established the existence of the
professional services rendered at the request of the defend-
ants under promise of paying therefor, while no payment of
the value thereof or of a reasonable fee has been made, and
that, in view of such proof, the defendants are obliged to com-
pensate the plaintiffs in the sum claimed, in compliance with
the provisions of sections 1080, 1086, 1140, 1225, 1611, 1612,
1613, 1614, 1711 and 1793 of the Civil Code, for which reason
the judgment should be set aside and a new trial granted the

plaintiffs, or a new judgment rendered in favor of the latter in accordance with the prayer contained in the complaint.

We will not discuss the appeal from the judgment rendered, because it was taken without the time fixed in the first subdivision of section 295 of the Code of Civil Procedure. Such is not the case with respect to the order denying a new trial, because the appeal was taken within the 10 days fixed in subdivision 3 of said section.

Let us examine the evidence heard in order to decide whether the judgment rendered is contrary thereto, and whether the new trial sought for should be granted.

The result of the evidence was the following:

Frederick L. Cornwell, a witness for the plaintiff, testified that about the month of November, 1905, while going from Ponce to Mayagüez, Eduardo Koppisch, a nephew of Clotilde Delgado, the tutoress of the minor children had by the first marriage of Diego García, spoke to him of the rights of the latter in the estate of their father, consisting of a sugar plantation, another similar plantation called "Santa Ana," and some urban property in the city of Mayagüez, all of which properties were the subject of much litigation; and Koppisch, having asked him whether he could do something for these minors, he answered him affirmatively, and in a day or two he received a visit from Koppisch, who explained the case to him more in detail; then he directed Chase Uhlman, who was working in his office, to investigate the case, which he did, bringing him the documents and papers relating to the matter, and after a study thereof, he arrived at the conclusion that the preparation of a bill in equity was proper, which preparation took six days or more on account of the many questions of law involved in the case; that he spoke with Mrs. Delgado and it was agreed with her that in the event of her not having sufficient money to continue the proceedings, the witness would assume charge thereof, under the condition of being given one-third of what she might receive, if the matter were settled before being taken to court; that Fajardo, a person

interested in the matter, proposed to him a compromise, by which the minors of the first marriage of Diego García were to receive $2,500, and upon informing the defendant of this proposed compromise, she apparently considered it a good one, but it appears that she wished to obtain the advice of some other person and finally asked him to postpone the matter to give her time to write to one of the minors who was at college in the United States, to which he agreed, and she subsequently refused the compromise and also to continue the litigation, no remuneration whatsoever having been obtained by the plaintiff firm for the work done, which they estimated at $850, taking the amount of the compromise as a basis.

Mateo Fajardo, also a witness for the plaintiff, stated that, being in possession of a tract of land in the *barrio* of Guanajibo, in the municipal district of Mayagüez, belonging to Diego García, he was disturbed by the news that the minors had certain claims to said land, until he heard from the lips of Koppisch, a nephew of Clotilde Delgado, that the matter was not progressing in the hands of Vázquez, and that he was going to give it to the firm of Horton & Cornwell, in view of which statement he urged Koppisch, who spoke on behalf of his aunt, to settle the matter personally without employing said firm, and having approached him later to see if a compromise could not be reached, Koppisch replied that the matter had already been placed in the hands of Cornwell; that one day he went to the office of Horton & Cornwell and saw them writing the bill with large volumes of law on the desks, studying them, and preparing a bill against a very large number of persons; and in view of the state of the matter, he endeavored to reach a compromise and pay more than the value of the litigated rights, having made an arrangement which he believed to be closed and which later was not carried out on account of the refusal of Clotilde Delgado, and that he did not know anything of his own knowledge of the agreement as to the fees to be charged by the plaintiffs.

The witnesses for the defendants were Eduardo Koppisch, Clotilde Delgado, María Luisa Mangual and Frederico Philippi.

Eduardo Koppisch stated that while on the way from Ponce to Mayagüez he met Cornwell on the train, and spoke to him of the difficulties which the defendant minors were encountering in settling the matter of the estate of their father, Diego García, to which Cornwell replied that although the matter was very difficult on account of the long time which had elapsed since the death of García, it could be prosecuted, and intimated that he would be willing to take charge of the same; that two or three days later he informed his aunt, Clotilde Delgado, of what had occurred and, at her request, he had an interview with Cornwell, without coming to a very definite decision or giving him any authority to take steps in the matter, although he believes that Cornwell took some steps on his own account, because he later stated that he had made a compromise with Mateo Farjado for $2,500, which compromise was not accepted; that on the date of the compromise, his aunt, Clotilde, had not seen Cornwell, nor had she ever made any definite contract with him as to compromise of the matter or the fees he was to receive; that he does not know whether Horton & Cornwell ever prepared any bill or took any steps in the matter, for which they had neither power nor authority; that said gentlemen knew from the witness that the documents relating to the matter were in the possession of Attorney Vázquez, and he supposes that they asked him for them; that the intervention of the witness in the matter was purely officious, at the suggestion of his aunt, but not representing her in legal form; that no mention was made of all the expenses being defrayed by Horton & Cornwell, and with reference to the payment of fees, if he remembers correctly, it was agreed that they were to receive 50 per cent of the amount recovered in the proceedings, and 37½ per cent or one-third in the event of a compromise being reached, but no authority was given Horton & Cornwell to bring any action whatsoever because it

was necessary to await the decision of one of the minors, who he heard afterwards had opposed it.

Clotilde Delgado testified that her nephew Koppisch urged her to entrust the defense of the minors to Cornwell, and notwithstanding the fact that she had answered that she was going to write to her grandson, who was already 18 years of age, to ask him his opinion, four days later Uhlman came to her and proposed a compromise, consisting in the payment of $2,500 in five years, of which amount the lawyer was to receive one-third, and that she did not accept such compromise, because Philippi had previously offered her the same amount under better conditions on behalf of Leopoldo Cabassa and she had refused to accept it; that it is not possible that the plaintiffs in four days had done any work; that she never saw Cornwell until she received the answer from her grandson, who told her not to give the matter to any lawyer, because the offers made were not good and he wished to assert his rights when he became of age; that the compromise was offered by Uhlman through an interpreter to one of her daughters, who answered that she could not decide anything, and the witness answered afterwards that the matter should follow its course without prejudice to persons, because it was very annoying to her to be offered what she had previously refused; that Koppisch and Cornwell agreed that when the contract was entered into, everything would be embodied therein and it would be signed by both parties, which was never done on account of their insistence in wishing her to accept a compromise as disadvantageous as that mentioned; that one of the stipulations of the compromise contract was to have been that Horton & Cornwell were to receive one-third of the amount secured, and that Koppisch did not speak to Horton & Cornwell as her attorney in fact, but as her nephew, and that she never authorized them to ask Attorney Vázquez for the papers.

María Luisa Mangual, a niece of Clotilde Delgado, and aunt of the minors, testified that about four days after Attorney Cornwell and Koppisch had spoken to each other, Uhlman

and Monagas went to see Clotilde, and as she was not in the
house at the time, Cornwell informed her of a compromise of
the matter for $2,500, of which Cornwell claimed one-third,
and as she had spoken with her mother on the subject, she
answered them that she assumed the authority to tell them
not to do anything, and that Clotilde would go to see them
immediately; that Clotilde spoke to Uhlman immediately, and
told him not to do anything because she had to write to Diego,
the eldest of the minors residing in New York, to get his
opinion; that Diego replied by the next mail to the effect that
he wished neither a compromise nor litigation, and then it
was that Clotilde spoke for the first time with Cornwell to
deliver him this answer, and that Koppisch did not represent
Clotilde in the matter, nor had the matter been definitely
placed in the hands of Horton & Cornwell.

Frederico Philippi confined himself to testifying as to a
compromise of $2,500 which he had offered Clotilde on behalf
of Leopoldo Cabassa, in payment of the estate of the minors
of whom she was the tutoress.

The plaintiff presented as documentary evidence a letter
from Coltilde Delgado, giving the age of the minors Diego,
Carmen, María Teresa and Jose María, which latter was
acknowledged by the signer, who explained that it referred to
the matter of the policy which the party plaintiff had collected,
and not to the matter connected with the fees claimed in this
litigation; while the defendants introduced as evidence a let-
ter from Diego García, dated January 17, 1906, referred to by
Clotilde and María Luisa Mangual in their testimony.

The lower court, after having considered the result of the
evidence presented by the plaintiff as well as by the defend-
ant, of which we have made a careful abstract, held that the
facts are in favor of the defendant, and we find that such con-
clusion is borne out by the evidence and is far from being con-
trary to the merits thereof.

Said court which heard the arguments and the testimony
of the witnesses at the trial, was in a better position than we

are properly to decide the vacillations and doubts arising from the testimony of the witnesses, taking as a guide the provisions of the act regulating the introduction of evidence, approved March 9, 1905.

On the present occasion, repeating what we said in disposing of the case of *Pedro Aufant y Figueroa* v. *Juan Serra Urgell et al.*, decided February 5th last, we must apply the principle already established by the jurisprudence of the American courts that "in cases of conflict or contradiction in the testimony of witnesses, the findings of the lower court on the evidence must be respected by the appellate court, unless it should be clearly shown that it abused such powers in some manner."

This principle has also been applied by this Supreme Court in the cases of *José Morales* v. *Machete Central,* 9 P. R. Rep., p. 117, and the *Estate of Edualdo Iglesias* v. *Gorgonio Bolívar*, 11 P. R. Rep., p. 422.

If the Mayagüez court did not consider the fundamental fact of the complaint to have been established—that is to say, that Attorney Cornwell had been entrusted by Clotilde Delgado with the defense of the interests of the defendant minors—there is no ground for the discussion of the violation of the provisions of law governing a contract or agency or any other, nor of the other questions raised by the defendants as new matter constituting their defense and exception.

As the legal grounds upon which the motion for a new trial is based do not exist, the order of the District Court of Mayagüez of September 14 of last year overruling such motion should be affirmed, and the appeal taken from the judgment rendered on April 22 of the same year should be dismissed with the costs against the appellant firm.

*Affirmed.*

Justices Figueras and MacLeary concurred.

Chief Justice Quiñones and Justice Wolf did not take part in the decision of this case.